# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA L. DUNEGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-457-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Debra L. Dunegan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 16, 1960, and was fifty-three years old at the time of the most recent administrative hearing (Tr. 1383). She completed three years of college and has worked as a secretary and wiring harness assembler (Tr. 1346, 1539). The claimant alleges that she has been unable to work since January 23, 2008, due to fibromyalgia, mental health issues, hypertension, sleep apnea, degenerative disc disease, osteoarthritis, obesity, PTSD, major depression, personality disorder, carpal tunnel syndrome, pancreatitis, arthritic changes of hands, difficulty understanding and carrying out tasks, problems interacting with the general public, distracted by others, chronic pain, anal surgery that resulted in leakage problems, poor concentration, jerking condition of body, decreased sensation and extremity weakness, dizziness, fatigue, poor sleep, lack of social functioning, and seizures (Tr. 1538).

## Procedural History

On July 10, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on August 8, 2012 filed a subsequent application for Title II benefits as well as for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her original application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 12, 2010 (Tr. 17-25). The Appeals Council denied review, but on appeal this Court reversed the

decision of the Commissioner in Case No. CIV-11-138-KEW and remanded the case for further proceedings on August 22, 2012 (Tr. 1422-1434). The remand order included instructions to consider *all* the claimant's impairments when he proffered a hypothetical to the vocational expert (VE), but attributed no error to the ALJ's credibility analysis (Tr. 1427-1432). The claimant then filed her subsequent Title II and Title XVI applications, so ALJ McClain associated the applications on the Court's remand, conducted a second administrative hearing, and again determined that the claimant was not disabled in a written decision dated March 25, 2013 (Tr. 1333-1348). The Appeals Council again denied review, so ALJ McClain's March 2013 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk and sit six hours in an eight-hour workday, with normal breaks. However, he imposed the additional physical limitation of avoiding work above shoulder level, and further limited her to simple, repetitive tasks, but found should was able to relate to supervisors and co-workers only superficially, and was unable to work with the general public (Tr. 1340). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy that she could perform, *e. g.*, sorting, hand packaging, and bakery worker assembly (Tr. 1347).

## Review

The claimant contends that the ALJ erred: (i) by failing to perform a proper step five determination when his hypothetical to the VE did not include *all* her impairments; (ii) by failing to properly weigh the medical source evidence, particularly the consultative mental examination; (iii) by failing to properly assess her credibility; and (iv) by failing to account for her obesity in assessing her RFC. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The medical evidence reveals that the claimant had the severe impairments of fibromyalgia, osteoarthritis, sleep apnea, atherosclerotic vascular disease, degenerative disc disease of the cervical spine, obesity, depression, post-traumatic stress disorder (PTSD), and personality disorder (Tr. 1335-1336). Additionally, the ALJ found that the claimant's medically determinable impairments of hypothyroidism, status post colon surgery, and history of pancreatitis were non-severe (Tr. 1336). Finally, he found that the claimant's allegations of carpal tunnel syndrome, lupus, rheumatoid arthritis, and abnormal electrocardiogram were medically nondeterminable impairments (Tr. 1337). As relevant to this appeal, the claimant received regular mental health treatment beginning on September 10, 2007 at Muscogee (Creek) Nation Behavioral Health and Substance Abuse Services (MNBHS), and was assessed for depression and anxiety, axis II deferred, chronic pain, hypertension, hypothyroidism, hair loss, and high cholesterol, and was assessed a GAF of 55 (Tr. 637, 635-714). Notes reflect that the claimant received weekly and sometimes bi-weekly treatment. Treatment plan review notes from

February 15, 2008; March 31, 2008; June 19, 2008; and September 18, 2008 state that the claimant was unable to work (Tr. 639-647). Treatment notes during that same time describe her as having a depressed mood and tearful affect (Tr. 653-714). A referral notice on January 7, 2009, indicates the claimant had a diagnosis of bipolar II MRE dep, dysthymic disorder, and social phobia, along with cluster b traits and her numerous health problems, and notes that her highest GAF was a 55, but her current was a 40 (Tr. 714). The claimant was sent to Rolling Hills Hospital for inpatient treatment and medication adjustment and stayed there seven days. Her Axis I diagnosis was: major depressive affective disorder recurrent episode unspecified, opioid dependence unspecified use, sedative/hypnotic/anxiolytic dependence unspecified use, and anxiety state unspecified, and she was assessed a GAF of 25 (Tr. 938). She continued with MNBHS in 2009, and reported continued depression and occasional difficulty leaving her house (Tr. 722-730, 811-820). Treatment records also reflect that in 2011 the claimant's depression had worsened and she was experiencing panic attacks, and assessed a GAF of 45 (Tr. 1574-1578).

Dr. Denise LeGrand, Psy. D., conducted a mental status/diagnostic examination of the claimant on September 22, 2008. Dr. LeGrand noted the claimant was "cooperative but extremely tearful," and experiencing pain at the time of the evaluation (Tr. 576). The claimant's affect and mood were consistent with her reports of being depressed and anxious, and her symptoms of depression included sleep disturbance, low energy level, change in appetite, feelings of helplessness and hopelessness, depressed mood most days, psychomotor agitation, low self-esteem, loss of interests in previously enjoyed activities,

-6-

and impairment in social relationships (Tr. 577). Dr. LeGrand estimated the claimant had a low average IQ between 80-89, and stated that her depression was severe and appeared to be chronic rather than recurrent. Additionally, Dr. LeGrand stated the claimant was in a great deal of pain due to her physical problems, but was somewhat histrionic in presentation, dependent on others, and avoidant of interpersonal relationships (Tr. 578). She assessed the claimant with PTSD, major depressive disorder severe without psychotic symptoms, pain disorder due to general medical condition, and personality disorder NOS (dependent, avoidant, histrionic traits), and assessed her a GAF of 40 (Tr. 578). In describing the effects of the claimant's mental impairments on her adaptive functioning, Dr. LeGrand stated:

> Her ability to follow instructions is low average. Her response in a work setting is below average and she will not work well at all around others. Her ability to maintain appearance, be reliable, communicate and interact in a socially adequate manner, and function independently is poor. Her capacity to cope with the typical mental/cognitive demands of basic work-like tasks, sustain concentration and persistence on basic tasks, and complete work-like tasks within an acceptable time frame is poor.

(Tr. 579).

State reviewing physician, Hannah Swallow, Ph.D., found that claimant had moderate limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, and pace, with insufficient evidence of episodes of decompensation (Tr. 619). Then Dr. Swallow indicated on a mental RFC assessment that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, and moderately limited in the ability to

work in coordination with or proximity to others without being distracted by them (Tr. 623-624). She then opined that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation (Tr. 625).

At the most recent administrative hearing, the claimant testified that she has problems with the use of her hands, and often drops and "slings" things (Tr. 1384). As to her mental impairments, she sees a counselor and a psychologist who manages her medications, treating her for anxiety and depression (Tr. 1384-1385). She stated that she sometimes goes to church, but not all the time because her panic and her pain are too bad (Tr. 1390).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. As relevant to this appeal, the ALJ devoted a lot of time at step four finding that the claimant's fibromyalgia was a medically determinable impairment, and noted the District Court's remand order directing him to consider the combined effects of the claimant's impairments (Tr. 1342-1343). He first discussed the combined effects of the claimant's physical impairments, then turned to discuss her mental impairments. He noted her treatment for depression but did not discuss any specific notes, diagnoses, or GAF scores, as well as Dr. LeGrand's evaluation including the assigned GAF of 40, and her regular psychiatric outpatient treatment. He took care to note during a hypertension check at the Cherokee National Health Services Clinic on January 11, 2013, which he characterized as an "objective psychiatric examination," that the claimant was oriented to person, place and time and had normal mood, affect,

memory, and judgment (Tr. 1754, 1758). The ALJ then agreed that the claimant had some degree of mental limitation, and found that Dr. LeGrand's opinion should be given "some weight" but "did not find how the degree of restriction in these abilities translates to specific limitations in these areas to indicate the type of work the claimant is able to perform" (Tr. 1345). He then gave the state agency reviewing opinions "greatest weight," because she used specific language he could cite in his RFC, and the opinions were "balanced, objective, and consistent with the evidence of record as a whole," which was demonstrated by their familiarity with the disability evaluation program (Tr. 1345-1346). The ALJ also noted the Court's approval of his previous credibility analysis, and directly quoted much of his earlier opinion as part of his credibility analysis in this written opinion. He also noted the claimant's reports as to side effects of her medications (drowsiness, problems concentrating), but stated, "it is reasonable to assume if the treating physician were aware of the side effects, the treating physician would adjust the medication in response" (Tr. 1344).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. LeGrand's report, but provided no analysis at all of her report in relation to the pertinent factors. Additionally, he assigned Dr. LeGrand's opinion "some weight" but ultimately concluded the state reviewing physician opinions were more balanced and consistent. However, he failed to even discuss the claimant's mental health treatment records or explain how the check-box forms completed by the state physicians provided more insight into her abilities than her treatment records and in-person consultative exams. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not*

*due to his or her own credibility judgments, speculation or lay opinion.'"), quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).) [quotations omitted] [emphasis in original].

The ALJ thus chose to ignore much of the probative evidence as to the limiting nature of the claimant's mental impairments. More specifically, the claimant was assessed with some very low GAF scores, only one of which exceeded 50. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (*e. g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e. g.*, no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004). "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," as the court stated in *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have considered whether the claimant's consistently substandard GAF scores were due to occupational factors, *see, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."), not simply reject them out of hand, or worse, ignore them. Likewise, the ALJ should have discussed the opinions from the claimant's counselor and psychologist that she was unable to work, rather than ignoring

-11-

them out of hand. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with his RFC determination, the Court cannot find that he performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**